UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| NEW ACCESS COMMUNICATIONS LLC and CHOICETEL COMMUNICATIONS LLC, | Civil No. 04-3529 (JRT/FLN) |
| Petitioners, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| QWEST CORPORATION, | |
| Respondent. | |

Lewis A. Remele, Jr. and Christopher R. Morris, **BASSFORD REMELE**, 33 South Sixth Street, Suite 3800, Minneapolis, MN 55402, for petitioners.

Larry D. Espel and Jeanette M. Bazis, **GREENE ESPEL, P.L.L.P.**, 200 South Sixth Street, Suite 1200, Minneapolis, MN 55402, and Jason D. Topp, **QWEST CORPORATION**, 200 South Fifth Street, Suite 395, Minneapolis, MN 55402, for respondent and third-party plaintiff.

Plaintiffs New Access Communications and its wholly owned subsidiary, Choicetel (together, "New Access") requested the Court to confirm an arbitration award, which defendant/third-party plaintiff Qwest Corporation ("Qwest") moved to vacate. In an Order dated March 31, 2005, the Court confirmed the arbitration award. *New Access Communications, LLC v. Qwest Corp.*, 2005 WL 1034134 (D. Minn. Mar. 31, 2005). New Access now moves the Court to correct certain clerical errors in the March 31 Order and for attorneys' fees and costs. Qwest moves the Court for a stay of execution of the

judgment and waiver of the supersedeas bond.  For the following reasons, the Court grants in part New Access's motion and denies Qwest's motion.

## BACKGROUND[1]

New Access opted-in to a series of interconnection agreements with Qwest in eight states, including Minnesota.  These interconnection agreements required Qwest to offer New Access any telecommunications service that it offers to its own customers at the wholesale rate, with the exception of promotional offerings lasting less than 90 days. *Id.*  In February 1999, Qwest introduced a short-term promotional offer designed to "win back" customers who had switched to Qwest's competitors.  Other carriers, such as New Access, could purchase the win back promotion according to the same terms that Qwest was offering to its retail customers, but were not offered the promotion at a wholesale rate.  In May 2002, at New Access's request, the Minnesota Public Utilities Commission examined Qwest's win back promotion and found it was unreasonably discriminatory and anti-competitive and disapproved the promotion.

On June 12, 2003, in accordance with the dispute resolution process detailed in the interconnection agreements, New Access filed a Claim and Demand for Arbitration against Qwest.  New Access asserted that Qwest's win back promotion wrongfully established an effective retail rate lower than the wholesale rate, and sought damages in the amount of the difference between the amounts actually charged to New Access and the "effective retail rate" calculated by New Access's expert.  New Access, also sought to

---

[1] A more comprehensive recitation of the background of this matter can be found in the Court's March 31, 2005 Order. *New Access v. Qwest*, 2005 WL 1034134.

have certain restitutional remedies ordered in a prior case instituted by the Minnesota Department of Commerce against Qwest extended to New Access, including damage payments for every month in which Qwest did not provide accurate daily usage file information.

An eight-day arbitration was held in February 2004. The arbitrators concluded that they were permitted to address New Access's damages claims with respect to the state of Minnesota because the Minnesota Public Utilities Commission had already found the Minnesota win back promotion unlawful, but that they could not consider New Access's claims relating to the seven other states in which New Access and Qwest had agreements. The arbitrators awarded New Access approximately $1.5 million in damages connected to the win back promotion. The arbitrators also determined that a portion of the restitution remedies awarded in the Department of Commerce case was properly extended to New Access. New Access submitted the award to the Minnesota Public Utilities Commission for approval, which Qwest contested. The Commission allowed the award to stand. Ultimately, this Court confirmed the arbitrators' award.

## DISCUSSION

**I.  NEW ACCESS'S MOTION TO CORRECT CLERICAL MISTAKES AND FOR REIMBURSEMENT OF COSTS AND ATTORNEYS' FEES**

    **A.  Clerical Mistakes**

        **1.  Caption**

New Access asserts that the caption of this case should be amended to identify the petitioners as "New Access Communications LLC and Choicetel LLC" rather than New

Access Communications, L.L.C. and Choicetel Communications, Inc." Qwest does not object to this modification, and the Court will amend the caption accordingly. Fed. R. Civ. P. 60(a).

### 2. Prejudgment Interest Related to the Daily Usage Files Award

In its discussion of the background of this case in the March 31 Order, the Court stated that "[t]he arbitrators also determined that the portion of the restitution remedies awarded in the Department of Commerce case related to daily usage file information was properly extended to New Access and awarded $184,474 in damages and prejudgment interest." *New Access*, 2005 WL 1034134, at *3. New Access correctly asserts that the arbitrators awarded $184,474 as the principal amount of damages, and then added prejudgment interest for a total award of $195,542 on that claim. The arbitrators noted that the interest had been calculated through the date of the award at the Minnesota statutory rate of 6% and that any additional interest should be calculated at the same rate. The Court will accordingly replace the last sentence of the eleventh paragraph of the March 31, 2005 Order to state "[t]he arbitrators also determined that the portion of the restitution remedies awarded in the DOC case related to daily usage file information was properly extended to New Access and awarded $184,474 in damages. The arbitrators also awarded prejudgment interest at the Minnesota statutory rate of 6% from the date of the filing of the claim." Fed. R. Civ. P. 60(a).

### 3. Specification of Damages

New Access suggests that the Court amend the Order to identify the specific amounts of principal and interest owed by Qwest for each claim, along with the applicable interest rates.  The Court finds that it has insufficient data upon which to make such a change and, accordingly, declines New Access's request.

### B. Attorneys' Fees and Costs

New Access moves for an award of attorneys' fees and costs in the amount of $78,651.54 and has submitted an affidavit to the Court detailing its request.  The arbitration clause of the interconnection agreement permits a party to recover fees and costs incurred if "it become[s] necessary to resort to court proceedings to enforce a Party's compliance with the dispute resolution process set forth herein."  *See* Minnesota Interconnection Agreement § 5.18.4.  However, "[e]ach party shall bear its own costs and attorneys fees" related to the various steps of the dispute resolution process, which culminates in submission of the arbitration opinion to the Commission.  *Id.*  Qwest opposes New Access's request, arguing that: (1) the plain language of the arbitration clause only refers to court proceedings required to achieve participation in the dispute resolution process, not court proceedings to enforce completion of the dispute resolution process; and (2) New Access's requested fees include fees incurred for non-court proceedings.  Qwest does not otherwise object to the reasonableness of New Access's requested fees and costs.

The Court agrees with Qwest that the disputed confirmation proceedings before the Minnesota Public Utilities Commission are non-court proceedings that are included in the dispute resolution process for which each party must bear its own costs. The Court disagrees, however, that the arbitration clause does not include fees and costs incurred in *enforcing* an arbitration award. The clause is intended to encourage prompt and complete compliance with the dispute resolution process agreed to by the parties and to ensure that the process is as final and binding as possible. Thus, just as compensation for fees and costs incurred in getting an unwilling party to the arbitration table are available, so are fees and costs incurred in ensuring that a recalcitrant party complies with the arbitration judgment. Accordingly, the Court will award New Access the following attorneys' fees and costs.

New Access requests attorneys' fees in the total amount of $77,104 and costs in the total amount of $1,547.54. Twenty-five entries between June 17, 2004 and July 22, 2004, totaling $16,512.00, relate to the submission of the arbitration award to the MPUC.[2] The Court, therefore, will subtract this amount from the total award. Additionally, the Court will subtract $791.23 in costs incurred by New Access between June 22, 2004 and July 23, 2004, prior to the July 26, 2004 commencement of this action

---

[2] $885.50 + 737.50 + 385 + 1062 + 1416 + 693 + 994.50 + 1032.50 + 1155 + 115.50 + 175 + 269.50 + 590 + 58.50 + 332.50 + 1032.50 + 560 + 350 + 105 + 206.50 + 737.50 + 295 + 590 + 1001 + 1732.50 = 16,512$

in state court.[3]  Accordingly, the Court awards New Access attorneys' fees and costs in the total amount of $61,348.31.[4]

## II. QWEST'S MOTION FOR STAY OF EXECUTION OF JUDGMENT AND WAIVER OF SUPERSEDEAS BOND

An appellant may request and obtain a stay of judgment pending appeal as a matter of right upon posting a supersedeas bond.  *See Am. Mfrs. Mut. Ins. Co. v. Am. Broadcasting-Paramount Theaters, Inc.*, 87 S. Ct. 1, 3 (1966); Fed. R. Civ. P. 62(d). "The general rule is for the district court to set a supersedeas bond in the full amount of the judgment plus interests, costs, and damages for delay." *Adzick v. Unum Life Ins. Co. of Am.*, 2003 WL 21011345 (D. Minn. Apr. 6, 2003).  The Court, however, is authorized to "waive the bond requirement and stay the enforcement of the judgment pending appeal without a bond." *Id.*

New Access withheld from Qwest approximately $2,500,000 in payments related to suspected overbilling in eight states including Minnesota.  Qwest argues that, because the arbitration award only addressed claims relating to Minnesota, a significant portion of the money that New Access withheld is simply sitting in New Access's accounts, despite never having been officially or legally awarded to New Access.  Accordingly, Qwest contends, New Access already has a quantity of Qwest's money approximately equivalent to the judgment in this case and does not require a bond to protect its interests.

---

[3] $4.80 + 94.50 + 83.75 + .37 + .5 + 6.25 + 3 + 1 + 412.50 + 8.75 + .37 + .37 + .37 + 7.50 + 17 + 17 + 17 + 83.20 + 33 = 791.23$

[4] $(77,104 - 16,512) + (1,547.54 - 791.23) = 61,348.31$

The Court finds that neither a stay of the judgment nor a waiver of the bond requirement are appropriate here. Defendant has not made an adequate showing that the Court should deviate from the general rule requiring a bond in the full amount of the judgment in this case. Initially, although the arbitrators' award included an offset for the amounts withheld by New Access pending the outcome of the arbitration, it is unclear what amount of the withheld funds related to the Minnesota claims, as opposed to the claims relating to the other states that the arbitration did not address. Thus, it is unclear what portion of the withheld funds might, theoretically, remain available to satisfy the judgment in this case. Furthermore, although Qwest makes much of the fact that New Access has not pursued equivalent legal action in the seven other states to determine the propriety of Qwest's billing, neither has Qwest sought to clarify the matter and obtain the withheld funds. The Court declines to apply some uncertain amount of the additional withheld monies to the Minnesota claims where neither the arbitrators nor either party have seen fit to do so.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that Petitioners' Motion to Correct Clerical Mistakes and for Reimbursement of Costs and Attorneys' Fees [Docket No. 47] is **GRANTED in part** as follows:

1. The caption of this case is **AMENDED** to identify the petitioners as: New Access Communications LLC and Choicetel Communications LLC.

2. The last sentence of the eleventh paragraph of this Court's March 31, 2005 Order [Docket No. 45] is **VACATED and REPLACED** with:

> The arbitrators also determined that the portion of the restitution remedies awarded in the DOC case related to daily usage file information was properly extended to New Access and awarded $184,474 in damages. The arbitrators also awarded prejudgment interest at the Minnesota statutory rate of 6% from the date of the filing of the claim.

3. Defendant Qwest shall **REMIT** to plaintiffs $60,592 in attorneys' fees and $756.31 in costs.

4. The motion is **DENIED** in all other respects.

It is **FURTHER ORDERED** that defendant Qwest's Motion to Stay Execution on Judgment and Waiver of Supersedeas Bond [Docket No. 56] is **DENIED.**


DATED: July 21, 2005                               s/John R. Tunheim
at Minneapolis, Minnesota.                         JOHN R. TUNHEIM
                                                   United States District Judge